[Cite as *In re I.B-C.* , 2019-Ohio-1464.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
ROSS COUNTY

| IN THE MATTER OF | : | Case Nos. | 18CA3647 |
| | | | 18CA3648 |
| I.B-C. | : | | 18CA3649 |
| J.B-K. | | | 18CA3650 |
| N.M.K. | : | | 18CA3651 |
| N.C.D.B-K. | | | 18CA3652 |
| R.E.K. | : | | 18CA3653 |
| T.A.B.K. | | | 18CA3654 |
| | : | | 18CA3655 |
| | | | 18CA3656 |
| | : | | 18CA3657 |
| | : | | |
| ADJUDICATED DEPENDENT CHILDREN | : | DECISION AND JUDGMENT ENTRY | |
| | : | | |
| | | **RELEASED: 04/03/2019** | |

APPEARANCES:

Matthew P. Brady, Grove City, Ohio, for appellant mother.

Chase B. Bunstine, Chillicothe, Ohio, for appellant father.

Matthew S. Schmidt, Ross County Prosecuting Attorney, and Jennifer L. Ater, Ross County Assistant Prosecuting Attorney, Chillicothe, Ohio, for appellee.

Hess, J.

{¶1}   After the Ross County Juvenile Court granted permanent custody of their six children[1] to the county Children's Services Division ("agency"), the mother and father appealed.  The father's sole assignment of error is that the trial court erred when it found that the agency made reasonable efforts towards reunification.  The record reflects that the trial court made reasonable-efforts findings at several stages of the proceedings.

---

[1] The mother is the biological parent of all six children. The father is the biological parent of all the children except I.B-C. I.B-C.'s biological father is serving a 16-year prison term.

Ross App. Nos. 18CA3647, 18CA3648, 18CA3649, 18CA3650, 18CA3651, 18CA3652, 18CA3653, 18CA3654, 18CA3655, 18CA3656, 18CA3657

2

Therefore, the agency established that reasonable efforts had been made prior to the hearing on the motion for permanent custody. Where the court has made earlier findings that the agency made reasonable reunification efforts, it need not do so at a hearing on a motion for permanent custody.  Nonetheless the trial court made such a finding, and the record supports it.  We overrule the father's sole assignment of error.

{¶2}  The mother raises three assignments of error. First she contends that the trial court's finding that J.B-K. could not be placed with her within a reasonable time and should not be placed with her was not supported by clear and convincing evidence. She contends that the trial court did not make specific findings under the applicable statute. However, no party filed a request for findings of fact and conclusions of law. The failure to request findings of fact and conclusions of law ordinarily results in a waiver of the right to challenge the trial court's lack of an explicit finding concerning an issue. Thus we presume that the trial court considered all the factors and all other relevant facts. The evidence supports a finding that the mother repeatedly and continuously failed to substantially remedy her substance abuse issue, which was one of the conditions that caused J.B-K.'s removal. We overrule mother's first assignment of error.

{¶3}  Next she contends that the trial court erred in not determining and specifically addressing the statutory best interest factors. Specifically, she argues that the trial court did not consider the wishes of the children. Again, because no party requested specific findings, the trial court had no obligation to make them. Nevertheless, we find that the trial court considered all the enumerated best interest factors, including the

Ross App. Nos. 18CA3647, 18CA3648, 18CA3649, 18CA3650, 18CA3651, 18CA3652, 18CA3653, 18CA3654, 18CA3655, 18CA3656, 18CA3657

3

children's wishes as expressed by the guardian ad litem, and set forth these findings even though no party requested them. We overrule the mother's second assignment of error.

{¶4} Last mother contends that the trial court's determination that permanent custody was in the best interest of the children was against the manifest weight of the evidence. However, after weighing the evidence and all reasonable inferences, considering the credibility of the witnesses after according the requisite deference to the trial court's determinations, we conclude that the trial court did not clearly lose its way or create a manifest miscarriage of justice. We overrule the mother's third assignment of error and affirm the judgment of the trial court.

I. FACTS

{¶5} The agency filed dependency actions and received temporary custody of five of the children in September 2016.  In December 2016, the trial court adjudicated the children dependent. That same month the father pled guilty to domestic violence and endangering children involving his six-year old child, T.A.B-K.; he received a sentence of seven months in prison.  When the sixth child, J.B-K., was born in January 2017, the agency received temporary custody. In March 2017 the trial court adjudicated J.B-K. dependent.  In June 2017 prior to the father's release from prison, the trial court ordered him not to have any contact with his children until further order.  In January 2018, the agency sought permanent custody of all six children under R.C. 2151.413. The guardian ad litem recommended that the agency have permanent custody of all six children.

{¶6} The permanent custody hearing occurred over a two-day period on May 21, and July 2, 2018. Both parents tested positive for illegal drugs at the end of the first day

Ross App. Nos. 18CA3647, 18CA3648, 18CA3649, 18CA3650, 18CA3651, 18CA3652, 18CA3653, 18CA3654, 18CA3655, 18CA3656, 18CA3657

4

of the hearing. Neither parent attended the July hearing date. The court proceeded with the hearing in their absence, as neither had spoken with their attorney since the last hearing and their whereabouts were unknown.

{¶7} Social worker Martha Grear testified that she was a participant with the Ross County Family Drug Court and first began working with the mother in the summer of 2016. Grear diagnosed the oldest child, I.B-C., with autism and attempted to help the mother find stable housing and employment. Grear testified that the mother never succeeded in obtaining stable housing or employment, her whereabouts became unknown, and the drug court eventually terminated her case.

{¶8} Cheri Smitley, the coordinator for the Ross County Family Drug Court, testified that the mother was admitted to the drug court program but she did not successfully complete drug counseling services, stopped coming to drug court, was found in contempt of the drug court orders, and was terminated for non-compliance with the drug court rules and regulations. In August 2017, the court terminated the mother from its program "for ongoing non-compliance with treatment, continued use of illegal substances, ongoing non-compliance with RCFDC Rules, failure to appear for RCFDC hearings without just cause, and failure to comply with child welfare case plan."

{¶9} After the mother was terminated from drug court in August 2017, she entered an inpatient drug treatment program for opiate dependency in October 2017. The program administrator testified that the mother left the facility with the father on a six-hour pass in March 2018 and never returned. The mother did not successfully complete the drug treatment program.

Ross App. Nos. 18CA3647, 18CA3648, 18CA3649, 18CA3650, 18CA3651, 18CA3652, 18CA3653, 18CA3654, 18CA3655, 18CA3656, 18CA3657

5

{¶10} Tracy Hathaway, a court liaison with a substance abuse treatment center, testified that she saw the father while he was in the Ross County jail in January 2018 and provided him with information about drug treatment services in Pike County where he resided. Hathaway testified that she spoke to the father again in March 2018 and he admitted that he had never pursued drug treatment services.

{¶11} Julia Thomes, a licensed social worker and therapist, testified that beginning in September 2016 she provided counseling services to four of the six children to try to stabilize their behavior issues. Thomes noted that the children's behavioral issues worsened after parental visits.

{¶12} Cheryl Carl supervised parental visitations between February 2017 and March 2018. Carl testified that visitations were scheduled to occur once per week for one hour, but the mother only attended 15 out of 23 scheduled visits and the father only attended 3 out of 10 scheduled visits. Carl testified that the visitations were chaotic and uncontrolled and neither parent consoled the oldest autistic child. Carl testified that she had to cancel visitation because of the parents' repeated failure to appear and that the last visitation was in March 2018.

{¶13} Agency caseworker Elizabeth Radcliff testified that the agency became involved because of the mother's illegal drug use and her unsupervised children were playing in the streets. When the agency became involved there were five children. The oldest autistic child was seven years old, the other children were ages six, four, two and one years old. Initially the agency worked with the mother and her extended family members in a failed attempt to keep the children and mother together. The five oldest

Ross App. Nos. 18CA3647, 18CA3648, 18CA3649, 18CA3650, 18CA3651, 18CA3652, 18CA3653, 18CA3654, 18CA3655, 18CA3656, 18CA3657

6

children had been in the agency's custody since September 2016. The agency initially placed the sixth child, newborn infant J.B-K., born in January 2017, with a maternal aunt, but removed and returned the infant to the agency's custody in April 2017.

{¶14} Radcliff testified that the case plan required the mother to successfully complete a drug treatment program, obtain and maintain suitable housing, maintain regular contact with the case worker and the children, and refrain from criminal activities. The mother failed to complete a drug treatment program and stopped attending children visitations. The father attended visitations sporadically and did not maintain contact with the agency or provide information about his whereabouts or contact information. Radcliff testified that the mother admitted she was addicted to opiates, had overdosed on them and the overdose scared her into checking herself into the inpatient treatment center in October 2017.

{¶15} Radcliff testified that the mother did well on her case plan and in the drug court program as long as the father was incarcerated, but that when he was released from prison, the mother would regress. The parents' failure to attend visitation upset the older children, and when they did occur, they were very chaotic and disruptive. (Tr. 158) Radcliff testified that after the mother left the inpatient treatment center in March 2018, she failed to contact the agency or her caseworker and her whereabouts were unknown. Radcliff testified that the agency learned of the parents whereabouts several months later when the parents informed the trial court that they had moved to the Sandusky, Ohio area.

Ross App. Nos. 18CA3647, 18CA3648, 18CA3649, 18CA3650, 18CA3651, 18CA3652, 18CA3653, 18CA3654, 18CA3655, 18CA3656, 18CA3657

7

{¶16} Radcliff testified that neither parent successfully completed drug treatment programs and neither maintained stable housing. Radcliff testified about the agency's efforts to assist them with drug treatment and housing. Radcliff testified that the father never signed a case plan because he was either incarcerated or failed to appear for visitation. The father had no contact with the agency after February 2018 and his whereabouts were unknown. Radcliff informed the father about his case plan goals on several occasions and provided him with addresses and actual pictures of drug treatment and screening centers in both Ross and Pike counties. Radcliff testified that the father of the oldest child, I.B-C., was incarcerated and would not be released from prison until September 2024. I.B-C.'s father did not complete the case plan and had no contact with I.B-C.

{¶17} Radcliff testified that the six children were in five different foster care families, that all but the oldest autistic child were in adoptive foster homes and she believed those families planned to adopt the five younger children.

{¶18} The parents failed to attend the second day of the hearing and presented no witnesses or evidence.

{¶19} The trial court entered judgment granting permanent custody of all six children to the agency and terminating the mother's and fathers' parental rights.

## II. ASSIGNMENTS OF ERROR

{¶20} Father assigns the following error for our review:

1. THE TRIAL COURT ERRED IN TERMINATING APPELLANT'S PARENTAL RIGHTS AS CHILDREN'S SERVICES DID NOT MAKE REASONABLE EFFORTS TO PERMIT THE CHILDREN TO RETURN HOME.

Ross App. Nos. 18CA3647, 18CA3648, 18CA3649, 18CA3650, 18CA3651, 18CA3652, 18CA3653, 18CA3654, 18CA3655, 18CA3656, 18CA3657

8

{¶21} Mother assigns the following errors for our review:

1. THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN FINDING BY CLEAR AND CONVINCING EVIDENCE THAT J.B-K. CANNOT BE PLACED WITH APPELLANT WITHIN A REASONABLE TIME OR SHOULD NOT BE PLACED WITH APPELLANT.

2. THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN NOT DETERMINING AND SPECIFICALLY ADDRESSING THE BEST INTEREST FACTORS UNDER R.C. 2151.414(D).

3. THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN FINDING THAT PERMANENT CUSTODY WAS IN THE BEST INTEREST OF THE MINOR CHILDREN WHEN SUCH A FINDING WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

III. LAW AND ANALYSIS

A. Standard of Review

{¶22} A reviewing court will not reverse a trial court's judgment in a permanent custody case unless it is against the manifest weight of the evidence. *See In re T.J.*, 4th Dist. Highland Nos. 15CA15 and 15CA16, 2016-Ohio-163, ¶ 25. "To determine whether a permanent custody decision is against the manifest weight of the evidence, an appellate court must weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether in resolving evidentiary conflicts, the trial court clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed * * * ." *Id.* at ¶ 25, citing *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517, ¶ 20. In reviewing evidence under this standard, we defer to the trial court's determinations of matters of credibility, which are crucial in these cases, where demeanor and attitude are not reflected well by the written record. *Eastley* at ¶ 21; *Davis v. Flickinger*, 77 Ohio St.3d 415, 419, 674 N.E.2d 1159 (1997).

Ross App. Nos. 18CA3647, 18CA3648, 18CA3649, 18CA3650, 18CA3651, 18CA3652, 18CA3653, 18CA3654, 18CA3655, 18CA3656, 18CA3657

9

{¶23} In a permanent custody case the dispositive issue on appeal is "whether the trial court's findings * * * were supported by clear and convincing evidence." *In re K.H.*, 119 Ohio St.3d 538, 2008-Ohio-4825, 895 N.E.2d 809, ¶ 43; R.C. 2151.414(B)(1). "Clear and convincing evidence" is "that measure or degree of proof which is more than a mere 'preponderance of the evidence,' but not to the extent of such certainty as is required 'beyond a reasonable doubt' in criminal cases and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *Cross v. Ledford*, 161 Ohio St. 469, 120 N.E.2d 118 (1954), paragraph three of the syllabus; *State ex rel. Pietrangelo v. Avon Lake*, 149 Ohio St.3d 273, 2016-Ohio-5725, 74 N.E.3d 419, ¶ 14. "[I]f the children services agency presented competent and credible evidence upon which the trier of fact reasonably could have formed a firm belief that permanent custody is warranted, then the court's decision is not against the manifest weight of the evidence." *In re R.M.*, 2013-Ohio-3588, 997 N.E.2d 169, ¶ 55 (4th Dist.).

{¶24} "The essential question we must resolve * * * is whether the amount of competent, credible evidence presented at trial produced in the court's mind a firm belief or conviction that permanent custody was warranted." *T.J.* at ¶ 26.

### B. The Agency's Reasonable Reunification Efforts

{¶25} The father contends that his failure to comply with or complete the case plan is the agency's fault because nearly all interactions with the agency were with the mother. Father concedes that he was incarcerated during a portion of the cases, but that there were times he was not incarcerated. He contends that the drug court had no contact with him and that Hathaway, who was a Ross County drug court liaison, provided him with

Ross App. Nos. 18CA3647, 18CA3648, 18CA3649, 18CA3650, 18CA3651, 18CA3652, 18CA3653, 18CA3654, 18CA3655, 18CA3656, 18CA3657

10

information on drug treatment services in Pike County but did not contact the agency on his behalf.

**{¶26}** However, the drug court witnesses testified that drug court is a voluntary program. There is no evidence in the record that the father volunteered to participate in the drug court program or cooperate with and accept services or assistance from drug court personnel. Hathaway testified that her contact with the father in the Ross County Jail arose because she was called to do drug screenings for anyone interested in drug and alcohol treatment. Although the father met the criteria for treatment, he was released from jail, returned to Pike County, and did not follow through on the drug treatment programs Hathaway provided him. His argument that Ross County Drug Court personnel should have done more for him is baseless.

**{¶27}** Father also contends that caseworker Radcliff did not get his signature on a case plan or present the case plans to him. He contends that he had "to guess" what he was expected to do to get his children back.

**{¶28}** However, Radcliff testified that she informed the father several times of the case plan goals and the services he was to complete. And she specifically told him the drug treatment and screening programs to which he should report. Radcliff testified that she did not obtain the father's signature on the case plans because he was incarcerated at the time two of them were prepared. Radcliff went to a children's visitation session in February 2018 to get both parent's signature on the third case plan, but because father was a no show, Radcliff was only able to get the mother's signature.

Ross App. Nos. 18CA3647, 18CA3648, 18CA3649, 18CA3650, 18CA3651, 18CA3652, 18CA3653, 18CA3654, 18CA3655, 18CA3656, 18CA3657

11

{¶29} R.C. 2151.419(A)(1) enumerates the types of hearings where the court must determine whether the agency has made "reasonable efforts to prevent the removal of the child from the child's home, to eliminate the continued removal of the child from the child's home, or to make it possible for the child to return safely home." The agency has the burden of proving that it has made those reasonable efforts. This statute "makes no reference to a hearing on a motion for permanent custody brought pursuant to R.C. 2151.413, or to hearings held on such motions pursuant to R.C. 2151.414." *In re C.F.*, 113 Ohio St.3d 73, 2007-Ohio-1104, 862 N.E.2d 816, ¶ 41 (noting that the types of hearings enumerated in the statute "involve adjudicatory, emergency, detention and temporary-disposition hearings, and dispositional hearings for abused, neglected, or dependent children, all of which occur prior to a decision transferring permanent custody to the state"). Instead, at various stages of the child-custody proceeding, the agency may be required to prove that it has made reasonable efforts at family reunification. "If the agency has not established that reasonable efforts have been made prior to the hearing on a motion for permanent custody, then it must demonstrate such efforts at that time." *Id.* at ¶ 43. Here, the permanent custody motion is governed by R.C 2151.413 and R.C. 2151.414. Therefore, the agency was not required to show reasonable reunification efforts at the hearing unless it had not been established previously. *Id.*

{¶30} At several stages of the proceedings the agency established that it made reasonable reunification efforts. In its September 15, 2016 entry granting the agency emergency temporary custody the court found that the agency "made reasonable efforts to prevent or eliminate the need for the children to be removed from the home." At the

Ross App. Nos. 18CA3647, 18CA3648, 18CA3649, 18CA3650, 18CA3651, 18CA3652, 18CA3653, 18CA3654, 18CA3655, 18CA3656, 18CA3657

12

dependency adjudication hearing in December 2016, the trial court found that the agency "has made reasonable efforts and continues to make reasonable efforts to make it possible for the children to safely return home through the provision of supportive services." In subsequent hearings in February and June 2017, the trial court found that the agency "has made reasonable efforts to prevent or eliminate the need for removal of the [children] from [their] home; and the Agency has made reasonable efforts to place the [children] and to finalize a permanency plan * * *" and the agency "has connected the family with case management services." In December 2017, the court held another review hearing and found that the agency "has made reasonable efforts to prevent or eliminate the need for removal of the [children] from [their] home * * *."

**{¶31}** Because the record reflects that the trial court made reasonable-effort findings when the children were committed to the agency's emergency custody, during several review stages, and at the adjudicatory hearing on dependency, the agency did not need to prove at the permanent custody hearing that it made reasonable reunification efforts. Nor did the trial court need to make such a determination. *Id.* at ¶ 42, 45.

**{¶32}** Although reasonable-effort findings were not required by the trial court, it included such a finding in its judgment. We consider that finding to be surplusage, but nonetheless supported in the record as reflected by our summary of the evidence produced of the permanent custody hearing.   We overrule the father's sole assignment of error.

Ross App. Nos. 18CA3647, 18CA3648, 18CA3649, 18CA3650, 18CA3651, 18CA3652, 18CA3653, 18CA3654, 18CA3655, 18CA3656, 18CA3657

13

### C. J.B-K. Cannot or Should not be Returned to Mother in a Reasonable Time

**{¶33}** Mother contends that because J.B-K. was not in the agency's temporary custody for twelve or more of a consecutive twenty-two-month period, the agency was required to show that "the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents." R.C. 2151.414(B)(1)(a). The mother contends that the trial court was required to explain with specificity what factor or factors under R.C. 2151.414(E) the court used to determine that the child could not be placed within a reasonable time. Mother argues that the trial court did not quote directly from the statute or use the phrase "continuously and repeatedly" when discussing the parents' failure to remedy the conditions causing the children to be removed from the home. Thus mother contends that the language the trial court used was insufficient to establish that the trial court made the finding under R.C. 2151.414(E)(1).

**{¶34}** Although the trial court entered some findings of fact and conclusions of law, appellants did not file a request for findings of fact and conclusions of law. Civ.R. 52 states: "When questions of fact are tried by a court without a jury, judgment may be general for the prevailing party unless one of the parties in writing requests otherwise * * * in which case, the court shall state in writing the conclusions of fact found separately from the conclusions of law." R.C. 2151.414(C) states: "If the court grants permanent custody of a child to a movant under this division, the court, upon the request of any party, shall file a written opinion setting forth its findings of fact and conclusions of law in relation to the proceeding." The failure to request findings of fact and conclusions of law ordinarily results in a waiver of the right to challenge the trial court's lack of an explicit finding

Ross App. Nos. 18CA3647, 18CA3648, 18CA3649, 18CA3650, 18CA3651, 18CA3652, 18CA3653, 18CA3654, 18CA3655, 18CA3656, 18CA3657

14

concerning an issue. *In re Barnhart,* 4th Dist. Athens No. 02CA20, 2002–Ohio–6023, ¶ 23. " '[W]hen a party does not request that the trial court make findings of fact and conclusions of law under Civ.R. 52, the reviewing court will presume that the trial court considered all the factors and all other relevant facts.' " *Id.,* quoting *Fallang v. Fallang,* 109 Ohio App.3d 543, 549, 672 N.E.2d 730 (12th Dist.1996).

**{¶35}** We apply this rule to R.C. 2151.414 permanent custody cases and have determined that unless a party requests findings of fact and conclusions of law, a trial court need not set forth specific factual findings regarding each R.C. 2151.414(D) best interest factor or the factors in R.C. 2151.414(E) regarding placement with either parent within a reasonable time. *See In re C.S.*, 4th Dist. Athens No. 15CA18, 2015-Ohio-4883, ¶ 29-31.

**{¶36}** Thus, in the absence of a proper request for findings of fact and conclusions of law, a trial court need not specifically set forth its findings regarding the R.C. 2151.414(E) factors. *See In re Burton,* 3rd Dist. Mercer No. 10–04–01, 2004–Ohio–4021, ¶ 22–23. Because there was no request the trial court was not required to set forth a specific analysis of the R.C. 2151.414(E) factors. Furthermore, in the absence of findings of fact and conclusions of law, we generally must presume that the trial court applied the law correctly and must affirm if some evidence in the record supports its judgment. *In re C.S.* at ¶ 32, ¶ 42 (Harsha, J. concurring and noting that "some evidence" in this context means "enough to satisfy the clear and convincing standard in the mind of a reasonable fact finder * * *.").

Ross App. Nos. 18CA3647, 18CA3648, 18CA3649, 18CA3650, 18CA3651, 18CA3652, 18CA3653, 18CA3654, 18CA3655, 18CA3656, 18CA3657

15

{¶37} Here the trial court set forth some facts regarding the R.C. 2151.414(E) factors. Without knowing how the trial court applied the facts to the R.C. 2151.414(E) factors, our review is circumscribed, and we must affirm the trial court's decision if there is some evidence to uphold it.

{¶38} R.C. 2151.414(E)(1) states:

> Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties.

The trial court determined that the agency proved by clear and convincing evidence that J.B-K. cannot and should not be reunified with the father or mother within a reasonable time, that the agency made reasonable efforts at reunification, that the concerns that gave rise to the removal of the children from their home had not been remedied, that the agency provided case management services and referrals to service providers, and that both parents failed to comply with or complete the case plan.

{¶39} Based on the trial court's language, it appears that R.C. 2151.414(E)(1) was the basis for its finding that the child could not be placed with either parent within a reasonable time. According to the complaint, J.B-K. was removed from the mother's custody shortly after birth because he was born positive for opiates and the mother continued to use drugs and test positive for amphetamines and methamphetamines. The

Ross App. Nos. 18CA3647, 18CA3648, 18CA3649, 18CA3650, 18CA3651, 18CA3652, 18CA3653, 18CA3654, 18CA3655, 18CA3656, 18CA3657

16

agency presented evidence that neither parent successfully completed a drug treatment program during the pendency of the case. The father never sought treatment. The mother was dismissed from drug court and failed to successfully complete an inpatient drug treatment program. Additionally, both parents tested positive for drugs at the end of the first day of the permanent custody hearing. Under these circumstances, the evidence supports a finding that the mother repeatedly and continuously failed to substantially remedy her substance abuse issue, which was one of the conditions that caused J.B-K.'s removal. Consequently, the evidence supports the trial court's determination that J.B-K. cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents. We overrule the mother's first assignment of error.

### D. Best Interest of the Child

{¶40} Next the mother contends that the trial court erred in not determining and specifically addressing the best interest factors, particularly the children's wishes. She contends that we should reject the precedent established in our district and require the trial court to specifically address the best interest factors under R.C. 2151.414(D) even though she did not request findings of fact and conclusions of law under Civ.R. 52 or R.C. 2151.414(C). She argues that this would provide "a more structured approach and a better opportunity to engage in meaningful appellate review."

{¶41} We disagree. We find that this approach would require us to rewrite the plain language of R.C. 2151.414(C), which states "* * * the court, upon the request of any party, shall file a written opinion setting forth its findings of fact and conclusions of law in relation to the proceeding." Because no party requested findings of fact and conclusions

Ross App. Nos. 18CA3647, 18CA3648, 18CA3649, 18CA3650, 18CA3651, 18CA3652, 18CA3653, 18CA3654, 18CA3655, 18CA3656, 18CA3657

17

of law, the court was not required to provide them. We see no reason to depart from our precedent and impose duties in contravention of the statute. In the absence of findings of fact and conclusions of law, we must presume that the trial court applied the law correctly and must affirm if some evidence in the record supports its judgment. *In re C.S.* at ¶ 32, ¶ 42.

**{¶42}** Here, despite no formal request, the trial court made best interest findings under R.C. 2151.414(D)(1). The trial court considered the interaction and interrelationship of the child with relatives and foster caregivers under R.C. 2151.414(D)(1)(a) when it found that all of the children had been previously adjudicated to be dependent children, there were no suitable relative placements, and that the children were all doing well in foster care and were adoptable. R.C. 2151.414(D)(1)(b) requires the trial court to consider the children's wishes "as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child." Here the children were young, their ages ranged from 16 months to nine years old. However, the nine-year old is autistic. The guardian ad litem prepared a report prior to the final hearing recommending that the agency be awarded permanent custody. The trial court acknowledged the report and expressly stated that the guardian ad litem recommended the agency's motion be granted. Thus the trial court did consider the children's wishes as expressed through the guardian ad litem, with due regard for the maturity of the children as required by R.C. 2151.414(D)(1)(b). The trial court acknowledged the custodial history as required under R.C. 2151.414(D)(1)(c), finding that five of the children had been in the temporary custody of the agency for twelve or more months of a twenty-two month period. Finally, the trial

Ross App. Nos. 18CA3647, 18CA3648, 18CA3649, 18CA3650, 18CA3651, 18CA3652, 18CA3653, 18CA3654, 18CA3655, 18CA3656, 18CA3657

18

court considered the children's needs for a legally secure placement under R.C. 2151.414(D)(1)(d) and found that all of the children are in need of permanency which cannot be obtained without the grant of permanent custody to the agency.

**{¶43}** The trial court considered all the enumerated best interest factors, including the children's wishes as expressed by the guardian ad litem and set forth these findings even though no party requested them. We overrule the mother's second assignment of error.

### E. Permanent Custody Finding

**{¶44}** The mother contends that the trial court's permanent custody award was erroneous because its best interest finding was against the manifest weight of the evidence.

### 1. Permanent Custody Principles

**{¶45}** "The United States Supreme Court has stated that parents' interest in the care, custody, and control of their children 'is perhaps the oldest of the fundamental liberty interests recognized by this Court.' " *In re B.C.,* 141 Ohio St.3d 55, 2014-Ohio-4558, 21 N.E.3d 308, ¶ 19, quoting *Troxel v. Granville*, 530 U.S. 57, 65, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000). "It is irrefutable that parents have fundamental constitutional rights free from government intervention in their decisions on the custody and caretaking of their children." *In re Mullen*, 129 Ohio St.3d 217, 2011-Ohio-3361, 953 N.E.2d 302, ¶ 26, citing *In re Hockstok*, 98 Ohio St.3d 238, 2002-Ohio-7208, 781 N.E.2d 971, ¶ 16. "It is also irrefutable that those rights are not absolute." *Mullen* at ¶ 26; *In re D.A.*, 113 Ohio St.3d 88 2007-Ohio-1105, 862 N.E.2d 829, ¶ 11. Instead, " 'it is plain that the natural rights of

Ross App. Nos. 18CA3647, 18CA3648, 18CA3649, 18CA3650, 18CA3651, 18CA3652, 18CA3653, 18CA3654, 18CA3655, 18CA3656, 18CA3657

19

a parent * * * are always subject to the ultimate welfare of the child, which is the pole star or controlling principle to be observed.' " *In re Cunningham*, 59 Ohio St.2d 100, 106, 391 N.E.2d 1034 (1979), quoting *In re R.J.C.,* 200 So.2d 54, 58 (Fla.App.1974). Thus, the state may terminate parental rights when the child's best interest requires it. *D.A.* at ¶ 11.

### 2. Permanent Custody Framework

**{¶46}** R.C. 2151.353(A)(4) permits a trial court to grant permanent custody of a child that is adjudicated an abused, neglected, or dependent to a children services agency if the court determines: (1) that the child cannot be placed with one of the child's parents within a reasonable time or should not be placed with either parent as provided in R.C. 2151.414(E) and (2) that the permanent commitment is in the best interest of the child as provided in R.C. 2151.414(D)(1)(a)-(e). The mother contests the second prong: the best interest finding.

### 3. Trial Court's Best Interest Finding

**{¶47}** Again, because no party requested findings of fact and conclusions of law, the court was not required to provide them. In the absence of findings of fact and conclusions of law, we presume that the trial court applied the law correctly and must affirm if some evidence in the record supports its judgment. *In re C.S.* at ¶ 32, ¶ 42.

**{¶48}** R.C. 2151.414(D)(1) requires the trial court "to consider 'all relevant factors,' including five enumerated statutory factors * * *. No one element is given greater weight or heightened significance." *In re C.F.*, 113 Ohio St.3d 73, 2007–Ohio–1104, 862 N.E.2d 816, ¶ 57, citing *In re Schaefer,* 111 Ohio St.3d 498, 2006–Ohio–5513, 857 N .E.2d 532, ¶ 6. The five enumerated factors include: (1) the child's interaction and interrelationship

Ross App. Nos. 18CA3647, 18CA3648, 18CA3649, 18CA3650, 18CA3651, 18CA3652, 18CA3653, 18CA3654, 18CA3655, 18CA3656, 18CA3657

20

with the child's parents, siblings, relatives, foster parents and out-of-home providers, and any other person who may significantly affect the child; (2) the child's wishes, as expressed directly by the child or through the child's guardian ad litem, with due regard for the child's maturity; (3) the child's custodial history; (4) the child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency; and (5) whether any factors listed under R.C. 2151.414(E)(7) to (11) apply.[2]

**{¶49}** The mother contends that there was little evidence in the record about the children's interaction with their foster care providers but ample evidence that the children are bonded with each other. She argues that although there was evidence that the foster homes were facilitating the children's relationships with each other, she speculates whether this will continue. However, Radcliff testified that due to the children's extreme behavior issues, the children had to be placed in several different homes and were receiving counseling. Radcliff testified that four of the foster homes "are family, so the children are all able to see one another without residing in the same home" and that their visits have been "very strong" and "they see one another often." Radcliff testified that all but the oldest child are in foster homes that intend to adopt the children. The mother cites no evidence in the record, nor have we found any, to support her speculation that at some point in the future, the children's bonds with each other will be severed. We find no support for the mother's argument that this factor (children's interactions and interrelationship)

---

[2] The parties apparently concede that none of the factors listed in R.C. 2151.414(E)(7)-(11) apply and the trial court did not expressly find that any of those factors applied.

Ross App. Nos. 18CA3647, 18CA3648, 18CA3649, 18CA3650, 18CA3651, 18CA3652, 18CA3653, 18CA3654, 18CA3655, 18CA3656, 18CA3657

21

supported a finding that permanent custody to the agency would not be in their best interest.

{¶50} We addressed the factor concerning the children's wishes when addressing the mother's second assignment of error. In light of the children's ages and mental conditions, the trial court considered the recommendation of their guardian ad litem that the agency be awarded permanent custody. And, despite her assertion that the trial court's failure to consider the children's wishes constitutes reversible error, she never objected to the guardian ad litem's report; she never questioned the guardian ad litem regarding the children's wishes; she never requested the trial court to conduct an in camera interview of the children; and she never objected to the trial court's failure to do. Thus, appellant failed to preserve this issue for appellate review. We find no plain error in the trial court's consideration of the guardian ad litem's report and recommendation. *See In re S.M.*, 4th Dist. Highland No. 14CA4, 2014-Ohio-2961, ¶ 33, and cases cited therein.

{¶51} Next the mother contends that the children's custodial history was also a factor that weighed against the trial court's grant of permanent custody. However, she concedes that the five oldest children had been in the agency's custody for approximately a year and a half. During this time the mother was never able to successfully complete a drug treatment program and continued to test positive for illegal drug use. Although she argues that there "was considerable time left for her to reunite with J.B-K.," the youngest child, this is again a speculative argument unsupported by the record. She failed multiple drug treatment programs, failed to visit the children, failed to notify the agency of her whereabouts, moved to Sandusky, Ohio, tested positive for illegal drugs the first day of

Ross App. Nos. 18CA3647, 18CA3648, 18CA3649, 18CA3650, 18CA3651, 18CA3652, 18CA3653, 18CA3654, 18CA3655, 18CA3656, 18CA3657

22

the permanent custody hearing, and failed to appear for the second day of the hearing. The evidence concerning the children's custodial history supported the trial court's best interest finding.

{¶52} Last the mother contends that she has the ability to provide a legally secure permanent placement. However, the only evidence she cites is testimony of Radcliff that the mother was able to provide an adequate environment in September 2016. Since that time, the testimony of several witnesses was that the mother was unable to secure adequate housing. The mother provided no evidence to refute these witnesses. We find that this factor weighed in favor of the trial court's best interest finding.

{¶53} After weighing the evidence and all reasonable inferences, considering the credibility of the witnesses after according the requisite deference to the trial court's determinations, we conclude that in resolving evidentiary conflicts, the trial court did not clearly lose its way or create a manifest miscarriage of justice requiring us to reverse its judgment awarding permanent custody of the children to the agency. We overrule the mother's third assignment of error and affirm the judgment of the trial court.

## IV. CONCLUSION

{¶54} The trial court's determinations that the agency used best efforts to accomplish reunification, that the children should not be placed with either parent, and that the permanent commitment is in the best interest of the children are all supported by the manifest weight of the evidence. Having overruled the assignments of error, we affirm the judgment of the trial court awarding permanent custody of the children to the agency.

JUDGMENT AFFIRMED.

Ross App. Nos. 18CA3647, 18CA3648, 18CA3649, 18CA3650, 18CA3651, 18CA3652, 18CA3653, 18CA3654, 18CA3655, 18CA3656, 18CA3657

23

## JUDGMENT ENTRY

It is ordered that the JUDGMENT IS AFFIRMED and that Appellant shall pay the costs.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Ross County Court of Common Pleas, Juvenile Division to carry this judgment into execution.

Any stay previously granted by this Court is hereby terminated as of the date of this entry.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Abele, P.J. & McFarland, J.: Concur in Judgment and Opinion.

For the Court

BY: _____
Michael D. Hess, Judge

## NOTICE TO COUNSEL

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**