[Cite as *In re T.J.*, 2016-Ohio-163.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
HIGHLAND COUNTY

IN THE MATTER OF: :

:

T.J. : Case Nos. 15CA15
: 15CA16
:

ADJUDICATED : DECISION AND JUDGMENT ENTRY
DEPENDENT CHILD. :

: **RELEASED: 1/13/2016**
_____
APPEARANCES:

Lee D. Koogler, Hillsboro, Ohio, for Appellant J.J.

Dennis Kirk, Hillsboro, Ohio, for Appellant A.G.

Anneka P. Collins, Highland County Prosecutor, and Molly Bolek, Highland County Assistant Prosecutor, Hillsboro, Ohio, for Appellee.
_____
Harsha, J.

{¶1}   T.J.'s biological parents separately appeal the trial court's judgment awarding Highland County Children Services (HCCS) permanent custody of their one and one-half-year-old child.  We *sua sponte* consolidated the appeals for purposes of decision.

{¶2}   Mother and father assert that the judgment awarding HCCS is against the manifest weight of the evidence because the record fails to clearly and convincingly show that awarding HCCS permanent custody would serve the child's best interest.  Neither parent specifically argues that the evidence fails to support the trial court's findings regarding the R.C. 2151.414(D) best interest factors.  Instead, the parents contend that their alleged case plan compliance shows that reunification is in the child's best interest.  However, a parent's case plan compliance is relevant only to the extent

that it may affect a child's best interest; i.e., a parent's case plan compliance or desire for reunification are not *ipso facto* the determinative factors when considering a child's best interest.  Rather, R.C. 2151.414(D) states that a court that is considering a child's best interest must consider all relevant factors including, (1) the child's interactions and interrelationships, (2) the child's wishes, as appropriate, (3) the child's custodial history, (4) whether the child needs a legally secure permanent placement and whether this type of placement can be achieved without granting permanent custody to the children services agency, and (5) whether R.C. 2151.414(E)(7) to (11) apply.  Mother's and father's arguments that they complied with the case plan and displayed a genuine desire for reunification are relevant but not outcome determinative *per se.*

{¶3}   Here, the record contains clear and convincing evidence to support the trial court's finding that granting HCCS permanent custody is in the child's best interest. Mother and father apparently interacted appropriately with the child.  However, their lack of commitment to visiting the child and choosing to move far away from the child negatively affected their ability to form a strong relationship with the child.  They did not even visit the child for over seven months.  Failing to visit a child for over seven months is not a sign that a parent has the commitment necessary to care for a child.  Nor does it help establish a parent-child bond. The child was removed from the parents' care at birth and has lived in the same foster home throughout the proceedings.  Neither parent has shown a willingness to provide a legally secure permanent placement for the child during those extended periods.  Additionally, their failure to have any contact with the child for over seven months constitutes abandonment under R.C. 2151.414(E)(10). These factors clearly and convincingly support the trial court's conclusion that awarding

HCCS permanent custody of T.J. is in his best interest.  Accordingly, we overrule mother's and father's assignments of error and affirm the trial court's judgment.

## I.  FACTS

{¶4}  In January of 2014, HCCS filed an abuse, neglect, and dependency complaint naming T.J., who was one-day-old. The complaint asserted that mother's older child, S.M., was adjudicated dependent in 2012 and that HCCS has since requested the court to grant it permanent custody of S.M.  HCCS also sought and obtained temporary emergency custody of T.J.  In March of 2014, the trial court adjudicated T.J. dependent and granted HCCS temporary custody.

{¶5}  HCCS developed a case plan aimed at reunifying T.J. with his parents. The case plan required mother (1) to complete a mental health assessment and follow any treatment recommendations, (2) to take prescribed medications, (3) to obtain and maintain stable, appropriate housing for at least six consecutive months, (4) to demonstrate that she can provide for the child's safety and stability on a consistent basis, and (5) to comply with probation.  The case plan required father (1) to obtain and maintain stable employment for at least six consecutive months, (2) to comply with probation, (3) to complete a substance abuse assessment and comply with any treatment recommendations, and (4) to submit to random drug screens.

{¶6}  In December of 2014, HCCS filed a motion to extend the temporary custody order for an additional six months.  HCCS asserted that the parents "have made significant progress on their case plan," but they have not successfully completed all of the case plan objectives.  HCCS stated that the parents have safe and stable housing and that father is employed.  However, he had not completed a substance

abuse treatment program, and mother had not engaged in mental health counseling.

Additionally, in July 2014, both parents had positive drug screens.  HCCS thus

requested the court to extend the temporary custody order for an additional six months

in order to allow the parents additional time to fulfill the case plan goals.

{¶7}   The court held a hearing in January of 2015 to consider HCCS's motion to

extend the temporary custody order.  Neither parent appeared.

Nonetheless, the court extended the temporary custody order. The court found that the

parents made "significant progress on their case plan services" and "that it is anticipated

that the child will be reunified with one or both parents within the period of the

extension."

{¶8}   On May 13, 2015, HCCS filed a motion to modify the disposition to

permanent custody.  HCCS alleged that T.J. is abandoned, has been in its temporary

custody for twelve or more months of a consecutive twenty-two month period, and

cannot or should not be placed with either parent within a reasonable time.  HCCS

alleged that neither mother nor father has had any contact with T.J. since December 15,

2014.

{¶9}   At the hearing on HCCS's permanent custody motion,  HCCS visitation

monitor Deloris Colville testified that since January 13, 2014, HCCS offered the parents

fifty-five visits with the child, but mother attended only twenty-three visits and father

attended only twenty visits.  Colville stated that neither parent has visited the child since

December 15, 2014.  Colville indicated that when the parents did visit, they interacted

appropriately with the child.

{¶10} The child's foster mother testified that her family shares a strong bond with the child, who has lived in her home since he was one day old. She testified that the child enjoys playing in the yard on the swings and slides and enjoys interacting with the chickens the family keeps. She testified that she has two other children, ages 13 and 8, and T.J. enjoys playing with her other children a great deal. All three children are very bonded with each other, love and hug each other, and her eight-year-old refers to T.J. as a sibling. She testified that T.J. is very bonded with her and her husband and looks forward to seeing them when they arrive home from work. She stated that she and her husband will adopt the child, if HCCS is awarded permanent custody of the child.

{¶11} HCCS caseworker Seth Queen testified that the child is bonded with the foster family. He explained that the case plan required father to complete a substance abuse assessment, to maintain employment, and to submit to random drug screens. He stated that the case plan required mother to undergo a mental health assessment, to obtain stable housing, and to take prescribed medication. Queen indicated that the parents had complied with some aspects of the case plan, but they failed to visit the child for over seven months. Queen spoke to the parents about their failure to visit the child, and the parents stated that they did not have transportation.

{¶12} Holly Hamilton, a caseworker at HCCS, testified that the last contact she had with the father and mother was in September 2014. She stated that she attempted to meet with them at their residence a number of times each month, by telephone and by personal visit, but no one would answer the phone or come to the door. Hamilton testified that the couple did not notify the agency that they had left Hillsboro. Hamilton

testified that they contacted her in April 2015 to notify her that they were residing in Richwood.

{¶13}  The parents testified that they currently live in Richwood, Ohio, which is located two and one-half hours away from Hillsboro.  They claimed that transportation difficulties prevented them from visiting the child for the seven-month period. While they lived in Hillsboro they had visitation hours with their child for two hours per week at the center and two hours per week at the mother's residence supervised by the agency.

{¶14}  The father testified that he was working in Hillsboro at a temporary job and was laid off after two months.  After he lost that job, he was unable to find steady work, so at some point after their visit with T.J. in December 2014, he moved to South Shore, Kentucky across the river from Portsmouth, Ohio to look for employment. He stated that an uncle told him that he had work for him in Kentucky and his uncle drove up from Kentucky to help him move.  However, about a month later, his uncle passed away.

{¶15}  The father testified that in February 2015 he moved from Kentucky to Richwood, Ohio, north of Marysville.  His mother, step-father, and step-sister live in Richwood. He was able to get from Kentucky to Ohio because his aunt dropped him off at Washington Court House and his mother picked him up and transported him to Richwood. He searched for employment in Richwood for approximately two weeks and was able to locate full time permanent custodial work at a Honda plant. He testified that his step-sister also works the same shift at Honda and he rode with her to and from work. The father testified that he has been working steadily at Honda since February 2015, moved into a two-bedroom condo several months later, and purchased a car a few months prior to the hearing. He testified that he has a learner's permit and is

working on obtaining his driver's license. He also testified that he and the mother have a new four-month-old baby that is living with them.

{¶16}  He testified that he was unable to visit T.J. after the December 2014 visit because he had no car or driver's license and had full time employment.  Although he was able to have family members drive him on isolated instances from Ohio to Kentucky and back during his search for work, neither his mother nor his step-sister could drive him the two and one-half hour trip to Hillsboro to visit his child on a weekly basis, even if he could arrange his work schedule around the agency's visitation hours.

{¶17}  He testified that he knew the move to Richwood would make visitation with his child difficult, but he left Hillsboro, in part, because it had a bad influence on him and he wanted a clean start. He testified that he has not used illegal drugs since he moved away from Hillsboro and must undergo random drugs screening at Honda to maintain his employment.

{¶18}  The mother testified that she was employed in Hillsboro at the time she last visited her child in December 2014, but quit employment to go with the child's father to Kentucky and on to Richwood. She testified that she has been unemployed continuously since and does not have work as an excuse for her failure to visit her child. Even though she is unemployed and available during the agency visitation hours, she testified that because she now lives in Richwood, she has no transportation and could not make arrangements with any adult to transport her to Hillsboro for a single visit since December 2014. She testified that even though the child's father's mother and step-father live close and are also unemployed, they were both too busy helping out the step-sister and her family to drive mother to see her child during the past seven months.

{¶19} The trial court awarded HCCS permanent custody of the child. The court found that the child has been in HCCS's temporary custody since January 13, 2014, and that neither parent has had any contact with the child since December 15, 2014. The court thus found that R.C. 2151.414(B)(1)(b) and (d) applied: (1) the parents abandoned their child; and (2) the child has been in HCCS's temporary custody for twelve or more months of a consecutive twenty-two month period.

{¶20} The court next determined that awarding HCCS permanent custody would serve the child's best interest. The court explained:

> "The minor child and foster family are very bonded to each other. The foster family will adopt the child if available.
> Neither parent has elected to have any contact with their son since December 15, 2014, which is 225 days as of the date of this hearing. The parents elected to move approximately two hours from Hillsboro and contend transportation issues and Agency unwillingness to set times convenient to them for visits were their reason for not contacting their son for the past 225 days. The Court is of the opinion the parents could and should have visited [the child] and is not persuaded by their excuses. The Court also notes on April 29, 2014, the mother was granted an additional two hours per week parenting time at her residence supervised by the Agency but elected to move away from Hillsboro and not take advantage of the extended visits at her Highland County home.
> The Court does note that when the parents chose to visit prior to December 15, 2014, the visits went well.
> The child at age 18 months is not old enough to verbalize his wishes.
> As to the custodial history of the child it is noted that [the child] has lived with his foster family since he was one day old and has never resided with either parent.
> There are currently no acceptable relative placements and a permanent placement for the child cannot be achieved without granting permanent custody to the Agency."

{¶21} The court additionally found that the parents abandoned their child and that mother had her parental rights permanently terminated for a sibling of the child and has not shown that she can provide a legally secure permanent placement and adequate care for the child.

{¶22} The court recognized that both parents completed the majority of their case plan objectives but determined that their compliance did "not override the complete abandonment by both parents of their minor child."  The court found their claim of transportation difficulties "disingenuous"  because they were able to find transportation when needed for other matters and could have remained living in Highland County, which would have prevented their claimed transportation difficulties.  The court found that the parents' actions demonstrated a lack of commitment to the child.  The court thus concluded that placing the child in HCCS's permanent custody and permanently terminating their parental rights would be in the child's best interest.

## II. ASSIGNMENT OF ERROR

{¶23}  A.G. raises one assignment of error:

"The trial court erred in finding that permanent custody was in the best interests of the child.  The court's best interest analysis was against the manifest weight of the evidence."

J.J. raises one assignment of error:

"The trial court's grant of permanent custody to the agency was against the manifest weight of the evidence, as clear and convincing evidence did not exist to support the trial court's finding that granting permanent custody to the agency was in the best interest of the child."

## III.  ANALYSIS

{¶24}  In their sole assignments of error, mother and father assert that the trial court's decision to award HCCS permanent custody is against the manifest weight of the evidence because the record fails to clearly and convincingly show that awarding HCCS permanent custody is in the child's best interest.  Neither parent focuses upon the best interest factors outlined in R.C. 2151.414(D).  Instead, they argue that their case plan compliance shows that reunification is in the child's best interest.  Mother

contends that she completed the major case plan objectives and displayed a commitment to the child, but transportation difficulties and geographical distance prevented her from visiting the child. Father argues that he "was making significant strides toward achieving reunification" with the child by attempting to satisfy the requirements of the case plan and that he shared a positive relationship with the child. Father like mother, also asserts that he had transportation difficulties and attempted to alleviate the problems so that he could visit the child more often. He claims that he "plainly demonstrate[d]" that he "desired to someday regain custody of T.J."

A. STANDARD OF REVIEW

{¶25} "A reviewing court generally will not disturb a trial court's permanent custody decision unless the decision is against the manifest weight of the evidence." *In re R.S.,* 4th Dist. Highland No. 13CA22, 2013–Ohio–5569, ¶29; *accord In re J.V.-M.P.,* 4th Dist. Washington No. 13CA37, 2014–Ohio–486, ¶11. To determine whether a permanent custody decision is against the manifest weight of the evidence, an appellate court must weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether in resolving evidentiary conflicts, the trial court clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed and a new trial ordered. *R.S.* at ¶30, citing *Eastley v. Volkman,* 132 Ohio St.3d 328, 2012–Ohio–2179, 972 N.E.2d 517, ¶20. In reviewing the evidence under this standard, we must defer to the trial court's credibility determinations because of the presumption in favor of the finder of fact. *Id.* at ¶33, citing *Eastley* at ¶21. Deferring to the trial court on matters of credibility is "crucial in a child custody case, where there may be much evident in the parties' demeanor and attitude that does not

translate to the record well." *Davis v. Flickinger,* 77 Ohio St.3d 415, 419, 674 N.E.2d 1159 (1997); *accord In re Christian,* 4th Dist. Athens No. 04CA10, 2004–Ohio–3146, ¶7. As the Ohio Supreme Court explained long-ago: "In proceedings involving the custody and welfare of children the power of the trial court to exercise discretion is peculiarly important. The knowledge obtained through contact with and observation of the parties and through independent investigation cannot be conveyed to a reviewing court by printed record." *Trickey v. Trickey,* 158 Ohio St. 9, 13, 106 N.E.2d 772 (1952). Furthermore, unlike an ordinary civil proceeding in which a jury has no contact with the parties before a trial, in a permanent custody case a trial court judge may have significant contact with the parties before permanent custody is even requested. *In re R.S.* at ¶34. In such a situation it is not unreasonable to presume that the trial court judge had far more opportunities to evaluate the credibility, demeanor, attitude, *etc.,* of the parties than this court ever could from a mere reading of the permanent custody hearing transcript. *Id.*

{¶26} In a permanent custody case, the dispositive issue on appeal is "whether the juvenile court's findings * * * were supported by clear and convincing evidence." *In re K.H.,* 119 Ohio St.3d 538, 2008–Ohio–4825, 895 N.E.2d 809, ¶ 43; *accord* R .C. 2151.414(B)(1). "Clear and convincing evidence" is "that measure or degree of proof which is more than a mere 'preponderance of the evidence,' but not to the extent of such certainty as is required 'beyond a reasonable doubt' in criminal cases, and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *Cross v. Ledford,* 161 Ohio St.469, 120 N.E.2d 118 (1954), paragraph three of the syllabus; *State ex rel. Miller v. Ohio State Hwy. Patrol,* 136 Ohio

St.3d 350, 2013–Ohio–3720, 995 N.E.2d 1175, ¶14.  "[I]f the children services agency presented competent and credible evidence upon which the trier of fact reasonably could have formed a firm belief that permanent custody is warranted, then the court's decision is not against the manifest weight of the evidence."  *In re R.M.,* --- Ohio App.3d ---, 2013–Ohio–3588, 997 N.E.2d 169, ¶55 (4th Dist.).  The essential question we must resolve when reviewing a permanent custody decision under the manifest weight of the evidence standard is whether the amount of competent, credible evidence presented at trial produced in the court's mind a firm belief or conviction that permanent custody was warranted.  *In re J.H.*, 4th Dist. Hocking No. 14CA4, 2014-Ohio-3108, ¶14.

## B.  PERMANENT CUSTODY PRINCIPLES

**{¶27}**  A parent has a "fundamental liberty interest" in the care, custody, and management of his or her child and an "essential" and "basic civil right" to raise his or her children.  *Santosky v. Kramer,* 455 U.S. 745, 753, 102 S.Ct. 1388, 71 L.Ed .2d 599 (1982); *In re Murray,* 52 Ohio St.3d 155, 156, 556 N.E.2d 1169 (1990); *accord In re D.A.*, 113 Ohio St.3d 88, 2007–Ohio–1105, 862 N.E.2d 829.  A parent's rights, however, are not absolute.  *D.A.* at ¶11.  Rather, "'it is plain that the natural rights of a parent * * * are always subject to the ultimate welfare of the child, which is the pole star or controlling principle to be observed.'"  *In re Cunningham,* 59 Ohio St.2d 100, 106, 391 N.E.2d 1034 (1979), quoting *In re R.J.C.,* 300 So.2d 54, 58 (Fla.App.1974).  Thus, the state may terminate parental rights when a child's best interest demands it.  *D.A .* at ¶11.

## C.  PERMANENT CUSTODY FRAMEWORK

{¶28} R.C. 2151.414(B)(1) permits a trial court to grant permanent custody of a child to a children services agency if the court determines by clear and convincing evidence that the child's best interest would be served by the award of permanent custody and that:

> (a) The child is not abandoned or orphaned or has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents.
> (b) The child is abandoned.
> (c) The child is orphaned, and there are no relatives of the child who are able to take permanent custody.
> (d) The child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999.
> (e) The child or another child in the custody of the parent or parents from whose custody the child has been removed has been adjudicated an abused, neglected, or dependent child on three separate occasions by any court in this state or another state.

{¶29} Thus, before a trial court may award a children services agency permanent custody it must find (1) that one of the circumstances described in R.C. 2151.414(B)(1) applies, and (2) that awarding the children services agency permanent custody would further the child's best interest. Here, the court found that R.C. 2151.414(D)(1)(b) and (d) applied, and neither parent challenges these findings. Thus, we do not address them.

### D. BEST INTEREST

{¶30} "In a best-interests analysis under R.C. 2151.414(D), a court must consider 'all relevant factors,' including five enumerated statutory factors * * *. No one element is given greater weight or heightened significance." *In re C.F.,* 113 Ohio St.3d

73, 2007–Ohio–1104, 862 N.E.2d 816, ¶57, citing *In re Schaefer,* 111 Ohio St.3d 498, 2006–Ohio–5513, 857 N.E.2d 532, ¶56. The five enumerated factors include: (1) the child's interaction and interrelationship with the child's parents, siblings, relatives, foster parents and out-of-home providers, and any other person who may significantly affect the child; (2) the child's wishes, as expressed directly by the child or through the child's guardian ad litem, with due regard for the child's maturity; (3) the child's custodial history; (4) the child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency; and (5) whether any factors listed under R.C. 2151.414(E)(7) to (11) apply.

{¶31} The record contains clear and convincing evidence to support the trial court's best interest determination.  Starting with respect to the child's interactions and interrelationships, the evidence shows that the child shares a strong bond with the foster family.  Although the parents may have had appropriate interactions with the child when they visited, they failed to visit the child for over seven months, which obviously negatively impacted any ability to forge a strong parent-child bond with their young child.  The parents' failure to visit does not demonstrate a willingness to maintain the continuous relationship and interaction necessary in any parent-child relationship. Even if their lack of visiting with the child resulted from transportation difficulties, the trial court noted that they apparently had no issue arranging transportation in order to meet other needs.  The court thus could justifiably discredit the parents' claimed transportation difficulties.  Moreover, as the trial court noted, the parents chose to move two and one-half hours away from the child. Knowing this would limit their ability to visit him. Their decision to move two and one-half hours away does not evince a firm commitment to

the child. Instead, their decision to move shows that they placed other interests above their child's.

**{¶32}** Regarding the child's wishes, the court noted that the child is too young to express them. However, the court observed that the guardian ad litem recommended that the court award HCCS permanent custody of the child.

**{¶33}** Turning next to the child's custodial history, the evidence shows that the child has continuously lived in the same foster home since he was one day old.

**{¶34}** The evidence further demonstrates that the child needs a legally secure permanent placement that cannot be achieved without granting HCCS permanent custody. HCCS found no suitable relative placements. Even if the parents presently live in a suitable residence, their lack of commitment to the child, *i.e.*, their failure to visit with the child for over seven months, shows that they are unwilling to provide the child with a legally secure permanent home.

**{¶35}** Additionally, their failure to have any contact with the child for over seven months constitutes abandonment under R.C. 2151.414(E)(10). *See* R.C. 2151.011(C), which states that presumption of abandonment arises if parent fails to visit or maintain contact with child for more than ninety days.

**{¶36}** Moreover, most of the parents' arguments focus not upon the child's best interest, but instead, upon their alleged case plan compliance. They assert that they complied with most aspects of the case plan and, therefore, that reunification is in the child's best interest. However, once the court finds the existence of one of the R.C. 2151.414(B)(1) factors, the child's best interest controls. *D.A., supra,* 2007–Ohio–1105, ¶11 ("Once the case reaches the disposition phase, the best interest of the child

controls."); *In re K.J.*, 4th Dist. Athens No. 08CA14, 2008-Ohio-5227, ¶24 (stating that

"when considering a R.C. 2151.414(D)(1)(d) permanent custody motion, the focus is

upon the child's best interests, not upon the parent's compliance with the case plan").  A

parent's case plan compliance may be relevant to the extent that it affects the child's

best interest.  *In re R.L.*, 9th Dist. Summit Nos. 27214 and 27233, 2014-Ohio-3117, ¶34

(stating that "although case plan compliance may be relevant to a trial court's best

interest determination, it is not dispositive of it").  However, simply because a parent

may have complied with a case plan does not preclude a trial court from awarding

permanent custody to a children services agency when doing so is in the child's best

interest.  *In re N.L.*, 9th Dist. Summit No. 27784, 2015-Ohio-4165, ¶35  (stating that

"substantial compliance with a case plan, in and of itself, does not establish that a grant

of permanent custody to an agency is erroneous"); *In re S.C.*, 8th Dist. Cuyahoga No.

102349, 2015-Ohio-2280, ¶40 ("Compliance with a case plan is not, in and of itself,

dispositive of the issue of reunification."); *In re W.C.J.,* 4th Dist. Jackson No. 14CA3,

2014-Ohio-5841, ¶46 ("Substantial compliance with a case plan is not necessarily

dispositive on the issue of reunification and does not preclude a grant of permanent

custody to a children's services agency.").

> **{¶37}**  And, as this court frequently recognizes:

> """ * * * [A] child should not have to endure the inevitable to its great detriment
> and harm in order to give the * * * [parent] an opportunity to prove her suitability.
> To anticipate the future, however, is at most, a difficult basis for a judicial
> determination.  The child's present condition and environment is the subject for
> decision not the expected or anticipated behavior of unsuitability or unfitness of
> the * * * [parent]. * * *  The law does not require the court to experiment with the
> child's welfare to see if he will suffer great detriment or harm."""

*W.C.J.* at ¶48, quoting *In re Bishop,* 36 Ohio App.3d 123, 126, 521 N.E.2d 838 (5th

Dist.1987), quoting *In re East,* 32 Ohio Misc. 65, 69, 288 N.E.2d 343, 346 (1972).

{¶38}  Here, the trial court could have determined that it would no longer

experiment with T.J.'s welfare in order to provide the parents with even more time to

show that they are willing to provide the child with a legally secure permanent

placement.  They had over a year and one-half to show that they would do so, yet after

HCCS had requested the court to extend the temporary custody order for six months in

order to allow the parents to complete the case plan objectives, the parents failed to

have any contact with the child for over seven months.  Clearly, this behavior does not

demonstrate a firm commitment to the child or help establish a strong parent-child bond.

Furthermore, it does not suggest that either parent holds the commitment necessary to

properly care for the child.  Instead of choosing to remain in a location where they could

readily visit the child, they chose to move two and one-half hours away, despite knowing

that obtaining transportation to visits with the child could prove problematic.  Although

we commend A.G. and J.J. for apparently attempting to improve their own lives, they

chose to do so without regard for the impact on T.J.

IV. CONCLUSION

{¶39}  Clear and convincing evidence supports the trial court's finding that

awarding HCCS is in the child's best interest.  Thus, its decision granting HCCS

permanent custody and terminating A.G.'s and J.J.'s parental rights is not against the

manifest weight of the evidence.  Accordingly, we overrule A.G.'s and J.J.'s

assignments of error and affirm the trial court's judgment.

JUDGMENT AFFIRMED.

## **JUDGMENT ENTRY**

It is ordered that the JUDGMENT IS AFFIRMED and that Appellant shall pay the costs.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Highland County Court of Common Pleas, Juvenile Division, to carry this judgment into execution.

Any stay previously granted by this Court is hereby terminated as of the date of this entry.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

McFarland, J. & Hoover, J.:  Concur in Judgment and Opinion.


For the Court



BY:  _____
        William H. Harsha, Judge




### **NOTICE TO COUNSEL**

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**