[Cite as *In re S.K.*, 2023-Ohio-4106.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
HIGHLAND COUNTY

| | | |
|---|---|---|
| In the Matter of: | : | Case No. 23CA7 |
| S.K. | : | <u>DECISION AND</u><br><u>JUDGMENT ENTRY</u> |
| Dependent Child. | : | |
| | | **RELEASED 11/8/2023** |

_____

<u>APPEARANCES</u>:

Steven H. Eckstein, Washington Court House, Ohio, for appellants.

Anneka P. Collins, Highland County Prosecutor, and Molly Bolek, Highland County Assistant Prosecutor, Hillsboro, Ohio, for appellee.

_____

Hess, J.

{¶1}    The parents of S.K. appeal a judgment of the Highland County Court of Common Pleas, Juvenile Division, granting permanent custody of the child to the Highland County Department of Job & Family Services, Children Services Division (the "Agency").  The parents present one assignment of error asserting the permanent custody award was against the manifest weight of the evidence.  For the reasons which follow, we overrule the assignment of error and affirm the juvenile court's judgment.

I.  FACTS AND PROCEDURAL HISTORY

{¶2}    On October 8, 2021, the Agency filed a complaint alleging that S.K., d.o.b. 9/27/21, was an abused, neglected, and dependent child.  The complaint alleged that the Agency had received a report that Mother and the child tested positive for THC when the child was born and that both parents refused the Agency's request for a drug screen. The complaint also alleged that Father claimed the parents had supplies for the baby, but an

Agency employee visited the parents' home and observed "very little basic needs for the baby: such as 3 diapers, 1 pack of wipes, clothing, 1 bottle, and 1 formula." The complaint requested a grant of emergency temporary custody to the Agency or a finding and appropriate disposition pursuant to R.C. 2151.353 or 2151.33(B)(1). The Agency also filed a motion for emergency temporary custody, which the juvenile court granted that day.

{¶3} On October 12, 2021, the juvenile court conducted a hearing and ordered that the child remain in the temporary custody of the Agency. On October 27, 2021, the Agency filed a family case plan, which the parents had signed. On November 18, 2021, the parents waived the right to a contested adjudicatory hearing, admitted the facts in the complaint were true, and admitted the child was dependent. The juvenile court found the child to be dependent, dismissed the abuse and neglect counts of the complaint, and approved the case plan.

{¶4} The parents waived the right to a separate contested dispositional hearing and agreed that temporary custody of the child be vested in the Agency until October 8, 2022, unless a timely motion was filed with the court. On August 23, 2022, the Agency filed a motion for permanent custody pursuant to R.C. 2151.414(B)(1)(a) and 2151.415(A)(4). The court scheduled a hearing on the motion for October 20, 2022. Mother requested a continuance, and the court rescheduled the hearing for January 9, 2023. The Agency then filed a motion to amend its permanent custody motion to request permanent custody pursuant to R.C. 2151.414(B)(1)(d). The juvenile court granted the motion. The parents did not appear at the hearing on January 9, 2023, due to alleged transportation issues and the court again continued the matter.

{¶5} The permanent custody hearing took place on March 29, 2023, and May 17, 2023. On the first day of the hearing, the parents appeared. The court heard testimony from Father regarding a motion he filed to withdraw his admission to dependency and overruled it. The court then heard testimony on the permanent custody motion from Delores Colville, Lauren Hall, and Teresa Smith. The second day of the hearing, the parents did not appear due to alleged transportation issues. The court spoke to them via phone and offered them transportation to the hearing. The parents declined, preferring to appear by phone. The parties stipulated that the child's paternal great-grandmother, who was unable to attend the hearing, would have testified that she observed the parents taking appropriate care of the child prior to the child's removal on October 8, 2021, and that the parents were working hard to provide a proper home and living environment for the child. The court then let Mother testify via phone. Father did not want to testify, and the parents elected to not participate in the hearing any further after Mother's testimony. The court terminated the call and then heard additional testimony from Colville, Smith, the child's foster mother, and the child's guardian ad litem.

{¶6} Colville, a visitation monitor at the Highland County Family Advocacy Center, testified the parents had 74 opportunities to visit the child at the center. Mother attended 15 visits, and Father attended 14 visits. Reasons the parents gave for missing visits were transportation issues, illness, and work schedule conflicts. Colville testified that during visits she observed Mother engaging in play activities with and providing general care to the child, and she observed Father holding and being "very loving toward" the child.

{¶7} Agency investigator and caseworker Lauren Hall testified that she was assigned to the case from the time the Agency filed the complaint until March 2022. She developed the case plan and reviewed it with the parents on October 27, 2021, before they signed it. Among other things, the plan required that the parents complete a drug and alcohol assessment, complete a mental health assessment, have stable income and housing, and submit to random drug screens. Hall never received information about the parents initiating any services and testified that she was unable to maintain regular contact with them. At the time of the child's removal, the parents were living with Father's grandparents in Lynchburg, Ohio. Hall made unsuccessful attempts to contact the parents there, and in February 2022, the grandparents told Hall that the parents were no longer residing with them. Subsequently, the parents told Hall that they were living with Mother's father in Ripley, Ohio, but would not give Hall the address. The parents refused Hall's requests for random drug screens at least nine times. Father did submit to a screen on October 27, 2021, and tested positive for methamphetamine and amphetamine.

{¶8} Agency caseworker Teresa Smith was assigned to the case in August 2022. Smith reviewed the case plan with the parents, but they did not report the completion of case plan services. Smith identified transportation as a barrier to the parents engaging in services. Smith testified that she told the parents that FRS offers transportation and offered to transport the parents herself, but they did not take her up on the offer. On cross-examination, Smith admitted the parents did ask her for transportation assistance on one occasion and that she could not help due to a scheduling conflict. Smith also acknowledged that FRS did not provide services to Brown County, where Ripley is located, until January 2023.

{¶9} Smith testified that the parents did not report any employment or other income sources to her. Smith testified that when she became the family's caseworker, the parents' reported address was in Lynchburg, and she tried to contact them there. In October 2022, she learned their actual address in Ripley and went there. The exterior of the home had black mildew on it, and there were piles of wood or boards and other debris outside the home. Smith was denied access to the interior of the home. When Smith returned to the home in February 2023, it did not look any better, and there was a foul odor by the front door. Smith was again denied access to the interior. Shortly before the second day of the permanent custody hearing, the parents gave Smith a new address. She tried to do a home visit but was unable to contact the parents even though there was a vehicle in the driveway and a television on in the home. Smith testified that the parents refused her requests for random drug screens, including a request she made the first day of the permanent custody hearing. Smith testified that the child had been with the same foster family throughout the case, and based on Smith's observations, the child had bonded with the foster parents and siblings. Smith testified that the Agency had not identified any appropriate relative placement options.

{¶10} The child's foster mother testified that the child had been placed in her home since October 8, 2021, when the child was a couple days old. The foster mother testified that the child was doing well, that she was bonded with the child, and that the foster parents wanted to adopt the child if the Agency got permanent custody. She testified that the parents had no contact with the child outside of scheduled visits at the Family Advocacy Center.

{¶11} Dennis Kirk, the guardian ad litem, testified the child was too young for him to interview.  Kirk observed interactions between the child and the foster mother.  The child seemed at ease, sought out the foster mother, and "[s]tayed pretty close to her."  He recommended that the court grant the Agency permanent custody because the parents "barely visited" the child and had "not pursued the goals on the case plan."  Kirk testified that his opinion could change if the parents completed the case plan.

{¶12} Mother testified that the parents moved to a new home in Hillsboro, Ohio, about a week before the second day of the permanent custody hearing.  They moved to be closer to and provide a better environment for the child.  Mother testified that she would allow the caseworker in the new home, which was in a great neighborhood, had two bedrooms, and was "beautiful inside and out."  Prior to the move, Mother was unemployed.  After the move, she did odd jobs she found on Facebook and earned about $70 in a week.  Mother testified that she was trying to get a full-time job.  Mother testified that Father was employed at Candle-lite in 2021 or 2022 and worked on a farm for a week in January 2023.  Father was not currently working.  He was a full-time student, and Mother expected him to graduate in two months and get a paralegal job.  The parents were using Father's student loan money to pay rent.

{¶13} Mother believed she could complete the case plan by October 2023. She inquired about parenting classes at Southern State a week or two before the second day of the permanent custody hearing but needed the Agency to make a referral so she could start the classes.  Mother scheduled mental health and drug and alcohol assessments in Brown County but had to cancel them due to the move and transportation issues. She still intended to complete the assessments.  Mother admitted that she had not submitted

to any drug screens but testified she only refused to submit to a drug screen on one occasion. Mother testified that her last visit with the child was March 1, 2023. She testified that the parents have had a lot of transportation issues, which impacted visitation, and that she was actively trying to resolve the problem. Mother testified that the parents had a car but it needed repairs. At Smith's suggestion, Mother contacted a Goodwill outlet to try to get assistance. Mother also contacted FRS, but the parents could not afford its transportation services.

{¶14} On May 22, 2023, the court issued a judgment entry granting the Agency permanent custody of the child. The court found that the child had been in the temporary custody of the Agency for 12 or more months of a consecutive 22-month period for purposes of R.C. 2151.414(B)(1)(d). The court also found that it was in the best interest of the child to award permanent custody to the Agency.

## II. ASSIGNMENT OF ERROR

{¶15} The parents present one assignment of error: "The trial court's grant of permanent custody to the [Highland] County Job and Family Services Children's Division was against the manifest weight of the evidence."

## III. MANIFEST WEIGHT OF THE EVIDENCE

{¶16} In their sole assignment of error, the parents contend that the permanent custody award was against the manifest weight of the evidence. The parents assert that Mother's testimony "was so strong that it countered the evidence of the Agency so that the trial court could not reasonably have formed the belief that permanent custody to the Agency was in the best interest of the child." The parents direct our attention to Mother's testimony about their new home, Mother's income, and her expectation that Father will

graduate and become a paralegal. The parents also direct our attention to Mother's testimony about transportation issues, efforts to complete parenting classes and required assessments, and only refusing to submit to a random drug screen one time. In addition, the parents assert that "[f]urther contradicting the weight of the Agency's evidence" was the stipulation that the child's paternal great-grandmother would have testified that prior to the child's removal, "she observed the parents taking proper care of the child."

### A.  Standard of Review

{¶17}  "A reviewing court will not reverse a trial court's judgment in a permanent custody case unless it is against the manifest weight of the evidence." *In re C.S.*, 4th Dist. Pike No. 19CA899, 2019-Ohio-5109, ¶ 21.  We have explained:

> "To determine whether a permanent custody decision is against the manifest weight of the evidence, an appellate court must weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether in resolving evidentiary conflicts, the trial court clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed and a new trial ordered." [*In re T.J.*, 4th Dist. Highland Nos. 15CA15, 15CA16, 2016-Ohio-163,] ¶ 25, citing *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517, ¶ 20. In reviewing evidence under this standard, we defer to the trial court's determinations of matters of credibility, which are crucial in these cases, where demeanor and attitude are not reflected well by the written record. *Eastley* at ¶ 21; *Davis v. Flickinger*, 77 Ohio St.3d 415, 419, 674 N.E.2d 1159 (1997).
>
> In a permanent custody case the dispositive issue on appeal is "whether the trial court's findings * * * were supported by clear and convincing evidence." *In re K.H.*, 119 Ohio St.3d 538, 2008-Ohio-4825, 895 N.E.2d 809, ¶ 43; R.C. 2151.414(B)(1).  "Clear and convincing evidence" is "that measure or degree of proof which is more than a mere 'preponderance of the evidence,' but not to the extent of such certainty as is required 'beyond a reasonable doubt' in criminal cases and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *Cross v. Ledford*, 161 Ohio St. 469, 120 N.E.2d 118 (1954), paragraph three of the syllabus; *State ex rel. Pietrangelo v. Avon Lake*, 149 Ohio St.3d 273, 2016-Ohio-5725, 74 N.E.3d 419, ¶ 14.  "[I]f the children services agency presented competent and credible evidence upon which the trier of fact

reasonably could have formed a firm belief that permanent custody is warranted, then the court's decision is not against the manifest weight of the evidence." *In re R.M.*, 2013-Ohio-3588, 997 N.E.2d 169, ¶ 55 (4th Dist.).

(First alteration added.)  *Id.* at ¶ 21-22.

### B.  Statutory Framework and Analysis

**{¶18}**  Under R.C. 2151.414(B)(1), a juvenile court may grant permanent custody to a public children services agency if the court determines by clear and convincing evidence that (1) any of the circumstances in R.C. 2151.414(B)(1)(a) through (e) apply, and (2) it is in the best interest of the child.  In this case, the juvenile court found that R.C. 2151.414(B)(1)(d) applied, i.e., "[t]he child has been in the temporary custody of one or more public children services agencies * * * for twelve or more months of a consecutive twenty-two-month period * * *."  The parents do not dispute that the child was in the temporary custody of the Agency for the requisite time; therefore, we must affirm the permanent custody award unless the juvenile court's best interest determination is against the manifest weight of the evidence.

**{¶19}**  R.C. 2151.414(D)(1) states:

In determining the best interest of a child * * * the court shall consider all relevant factors, including, but not limited to, the following:

(a) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;

(b) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;

(c) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies * * * for twelve or more months of a consecutive twenty-two-month period * * *;

(d) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;

(e) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child.

For the purposes of division (D)(1) of this section, a child shall be considered to have entered the temporary custody of an agency on the earlier of the date the child is adjudicated pursuant to section 2151.28 of the Revised Code or the date that is sixty days after the removal of the child from home.

No one factor has "greater weight or heightened significance." *In re C.F.*, 113 Ohio St.3d 73, 2007-Ohio-1104, 862 N.E.2d 816, ¶ 57.

### 1. Interactions and Interrelationships of the Child

**{¶20}** There is evidence to support the juvenile court's finding that the child "bonded with and adjusted well to [the child's] current foster family" and that the foster parents were willing to adopt the child.  While the child had some relationship with the parents during the proceedings, there was evidence that Mother only attended 15 out of 74 visits, that Father only attended 14 out of 74 visits, and that the parents had no contact with the child outside of those visits.  The parents claimed transportation issues were a barrier to visitation, but as the juvenile court found, if they "truly prioritized reunifying with S.K. they would have found a way to have contact with [the child] more than 15 times since October of 2021."

### 2. Wishes of the Child

**{¶21}**  The child was too young to express the child's wishes.

### 3. Custodial History

**{¶22}** The child was removed from the parents' custody when the child was 11 days old. The child was in the temporary custody of the Agency for 12 or more months of a consecutive 22-month period.

### 4. Legally Secure Permanent Placement

**{¶23}** The Ohio Revised Code does not define the phrase "legally secure permanent placement," but "this court and others have generally interpreted the phrase to mean a safe, stable, consistent environment where a child's needs will be met." *In re M.B.*, 4th Dist. Highland No. 15CA19, 2016-Ohio-793, ¶ 56. "A legally secure permanent placement is more than a house with four walls. Rather, it generally encompasses a stable environment where a child will live in safety with one or more dependable adults who will provide for the child's needs." *Id.*

**{¶24}** Evidence supports the juvenile court's finding that a legally secure permanent placement could not be achieved without a grant of permanent custody to the Agency. The Agency presented evidence that the child has been doing well in the Agency's temporary custody and that the foster parents, with whom the child has lived for almost all the child's life, are interested in adoption. As the juvenile court found, there were "no viable relative placements for S.K.," and the child's parents were "unable or unwilling to provide a safe, secure and suitable home for [the child] during the pendency of this action." Although the parents suggest that they have made progress in this regard, the parents did not obtain a residence of their own until about a week before the second day of the permanent custody hearing, and the Agency was not able to determine its suitability. The juvenile court did not believe the parents had any interest in completing the case plan. The parents made no meaningful progress in approximately 18 months.

And as the juvenile court pointed out, the fact that they "elected not to appear and defend the permanent custody motion" on the second day of the hearing, even after the court offered them transportation, "speaks volumes * * * as to the intent of the parents concerning reunification with S.K." The juvenile court found there was no credible evidence "that the efforts, or lack thereof, by the parents to reunify will be any different if additional time is granted." The juvenile court was in the best position to judge credibility, and we defer to its credibility determinations. *In re C.S.*, 4th Dist. Pike No. 19CA899, 2019-Ohio-5109, ¶ 21.

### 5. R.C. 2151.414(E)(7) to (E)(11) Factors

**{¶25}** The juvenile court did not find R.C. 2151.414(E)(7) to (E)(11) applied.

### 6. Totality of the Circumstances

**{¶26}** Based on the foregoing, we conclude the juvenile court's best interest finding is not against the manifest weight of the evidence. The Agency presented competent and credible evidence upon which the court reasonably could have formed a firm belief that a grant of permanent custody to the Agency was in the best interest of the child. Accordingly, we conclude that the permanent custody award is not against the manifest weight of the evidence, overrule the sole assignment of error, and affirm the juvenile court's judgment.

JUDGMENT AFFIRMED.

## **JUDGMENT ENTRY**

It is ordered that the JUDGMENT IS AFFIRMED and that appellants shall pay the costs.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Highland County Common Pleas Court, Juvenile Division, to carry this judgment into execution.

Any stay previously granted by this Court is hereby terminated as of the date of this entry.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Smith, P.J. & Abele, J.: Concur in Judgment and Opinion.


For the Court



BY: _____
Michael D. Hess, Judge




## NOTICE TO COUNSEL

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**